UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CONNIE LEAPLEY, CELINA FIGUEROA DE CONTRERAS, and JURITHZY CONTRERAS on behalf of themselves, and all others similarly situated | ) ) ) ) ) ) Case No. |
| Plaintiffs, | ) ) |
| v. | ) ) |
| MILK SPECIALTIES COMPANY d/b/a ACTUS NUTRITION, | ) ) **CLASS ACTION** ) ) **JURY TRIAL DEMANDED** |
| Defendant. | ) |

## CLASS ACTION COMPLAINT AND JURY DEMAND

### INTRODUCTION

Plaintiffs bring this class action against the Defendant, Actus Nutrition, for its milk and whey processing facility ("Defendant" or the "facility") located in Norfolk, Nebraska. Through its industrial processes, Defendant releases noxious odors that invade Plaintiffs' property, causing damages through negligence and private and public nuisance for which Plaintiffs seek compensatory and punitive relief against Defendant as well as injunctive relief not inconsistent with Defendant's federally and state enforced air permits.

### PARTIES

1. At all times relevant hereto, Plaintiff Connie Leapley has resided and intends to remain at 727 S. 18th St., Circle #9, in Norfolk, County of Madison, State of Nebraska. Plaintiff is an individual domiciled in Nebraska; therefore, Plaintiff is a citizen of the State of Nebraska.

2. At all times relevant hereto, Plaintiff Celina Figueroa de Contreras has resided and intends to remain at 1002 S. 6th St., in Norfolk, County of Madison, State of Nebraska. Plaintiff

1

is an individual domiciled in Nebraska; therefore, Plaintiff is a citizen of the State of Nebraska.

3. At all times relevant hereto, Plaintiff Jurithzy Contreras has resided and intends to remain at 1002 S. 6th St., in Norfolk, County of Madison, State of Nebraska. Plaintiff is an individual domiciled in Nebraska; therefore, Plaintiff is a citizen of the State of Nebraska.

4. Defendant Actus Nutrition is a corporation formed under the laws of Delaware.

5. Defendant's corporate activities are directed, controlled, and coordinated from its headquarters in Eden Prairie, Minnesota.

6. Defendant, its agents, and its predecessors, operate and maintain the Actus Nutrition milk and whey processing facility located at 805 Omaha Ave, Norfolk, County of Madison, and State of Nebraska.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because there are 100 or more Class Members and the aggregate amount in controversy exceeds Five Million Dollars ($5,000,000.00) exclusive of interest and costs. Additionally, Class Members are citizens of a state different from the citizenship of the Defendant.

8. The Court has personal jurisdiction over Defendant, who has sufficient minimum contacts with the State of Nebraska, because it regularly conducts business in Nebraska through its ownership and operation of the facility and Plaintiffs' claims arise through such contacts with the forum state.

9. Exercising personal jurisdiction over Defendant for its contacts satisfies due process and does not offend traditional notions of fair play and substantial justice because Defendant has purposefully availed itself of the laws of the State of Nebraska and it benefits by regularly conducting business through its industrial operations in the state.

10. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because there are 100 or more Class Members and the aggregate amount in controversy exceeds Five Million Dollars ($5,000,000.00) exclusive of interest and costs. Additionally, Class Members are citizens of a state different from the citizenship of the Defendant.

11. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2), because a substantial portion of the events or omissions giving rise to Plaintiffs' claims took place in this District, and because much, if not all, of the property that is subject of this action is geographically situated in this District.

## GENERAL ALLEGATIONS

11. Defendant operates a milk and whey processing facility that converts dairy products into milk and whey protein derivatives and milk-derived beverages. Through this process Defendant unnecessarily emits noxious odors into the nearby residential community.

12. Defendant's facility processes raw dairy material, such as milk, whey, and cream, and converts those materials into various milk and whey protein powders, caseinates, creamers, and ready-to-drink beverages.

13. Through these processes, raw dairy material is loaded into tanks and goes through various processes to produce certain products. Following these processes, storage tanks and piping are cleaned between batches, requiring several flushing rounds with water or chemicals before being sanitized.

14. Material from its initial cleaning process is collected and concentrated by an evaporator and stored at the facility. High strength waste liquid leaves the tanks by truckload and is delivered offsite. The facility's wastewater is also discharged to the City of Norfolk's publicly owned treatment works (POTW).

15. Defendant's wastewater treatment processes involve byproducts that have the potential to be highly odiferous, and which may emit noxious odors into the ambient air if not properly disposed, contained, or controlled.

16. Defendant's industrial processes at the facility involve other raw materials and/or create byproducts and waste that are naturally highly odiferous. These raw materials and/or byproducts may emit objectionable odors if not properly ventilated, contained, or controlled.

17. A properly designed, operated, and maintained milk and whey processing facility will adequately capture, remove, and dispose of excess noxious emissions and will not emit noxious odors into the ambient air as fugitive emissions.

18. Defendant is required to control its odorous emissions by, among other things, operating and maintaining the facility in a manner that adequately captures, controls, and mitigates odorous emissions to prevent them from escaping into the ambient air surrounding the facility and implementing other reasonably available odor mitigation, elimination, and control systems at the facility.

19. On frequent, recurring, and continuing occasions too numerous to list herein, Plaintiffs' property has been and continues to be physically invaded by noxious odors.

20. The noxious odors which entered Plaintiffs' property originated from the Defendant's facility, where they are generated as a result of Defendant's operations.

21. These odors caused by the facility have been and continue to be dispersed across all public and private land in the Class Area.

22. Plaintiffs and members of the putative Class suffer serious discomfort because of Defendant's noxious odors that interfere with their use and enjoyment of property.

23. The foul odors emitted from Defendant's facility are offensive, would be offensive

to a reasonable person of ordinary health and sensibilities, and have caused property damage.

24. The invasion of Plaintiffs' property and that of the Class by noxious odors has reduced the value of that property and has interfered with the use and enjoyment of that property, resulting in damages.

25. Emissions from Defendant's facility and wastewater processes have been the subject of frequent complaints from residents in the neighboring area.

26. Numerous residents have already communicated with Plaintiffs' counsel regarding their experiences with Defendant's emissions.

27. Below is a small sample of the factual allegations made by putative class members to Plaintiffs' counsel, demonstrating that Defendant's facility is the source and cause of the odor emissions, which have caused damage to neighboring properties:

   a. On September 12, 2025, Plaintiff Connie Leapley reported that she "has noticed a nasty lingering odor for quite some time, whenever the south wind would shift. More importantly, I am concerned, living next to the gulch, how this directly affects me and my health."

   b. On September 16, 2025, Plaintiffs Celina Figueroa de Contreras and Jurithzy Contreras indicated that "the odor is so bad that you can't open windows to let in air because the whole house stinks up. The smell not only lingers for hours but it's constant day and night."

   c. On September 8, 2025, putative class members Josh Green and Lauren Timperley stated that "The smell is horrible. It ruins all outdoor activities. Kids don't want to play outside. Don't want to grill outside. It's embarrassing to have friends and family over. Ongoing issue."

    d. On September 15, 2025, putative class members Carisa and Tim Hoffman indicated that the "odors affect the ability for us to enjoy sitting on our deck and enjoy the morning before going to work. I work from home most days, and I enjoy opening my windows. The odor prevents me from being able to open my windows to enjoy the fresh air."

28. Defendant's facility has repeatedly and continuously emitted objectionable noxious odors that were detected outside the bounds of its property.

29. Defendant's equalization tank, which stores high strength waste, is an identified source of odor emissions from the facility. The Nebraska Department of Water, Energy, and Environment (DWEE) cited it as a source during an October 2, 2024 site visit: "a new diffuser is planned to be put into the equalization tank on October 9th to help with odors that have developed since the equalization tank was put into service."

30. Defendant has been repeatedly cited by regulators for failing to operate its facility in accordance with its permits. Examples include, but are not limited to the following:

    A. Defendant has self-reported numerous Notices of Violation (NOV) to DWEE, detailing discharges of pH, Total Suspended Solids (TSS), and/or Biochemical Oxygen Demand (BOD), exceeding its permit limits under the National Pollution Discharge Elimination System (NPDES).

    B. On March 29, 2024, the City of Norfolk suspended Defendant's industrial sewer discharge permit for Defendant's repeated overloading of its own wastewater treatment plant in March 2024, discharging at levels well beyond its permit limits.

    C. On May 13, 2024, DWEE issued a Letter of Noncompliance (LNC) to Defendant for the facility's continued limit exceedances of pH, in violation of its NPDES permit, from January 2024 through May 2024. Defendant was requested to submit lab reports and documentation that it returned to operating within its permit limits and that its pH adjustment system was installed and working correctly.

    D. On July 16, 2024, DWEE issued an LNC to Defendant for violations of its industrial

stormwater permit under NPDES, failing to provide documentation of quarterly and annual inspections; failing to provide analytical and visual monitoring during inspections; failing to identify all storm water outfalls and to conduct monitoring thereof; failing to update its Storm Water Pollution Prevention Plan (SWPPP); and failing to provide Corrective Action Reports submitted to DWEE for self-reported discharges, incomplete monitoring, or incomplete inspection reports.

E.  On March 10, 2025, DWEE issued an LNC to Defendant for the facility's continued limit exceedances of pH, TSS, and BOD; for its failure to notify NDEE of its violations; and for an unanticipated bypass to the City of Norfolk's wastewater treatment facility (WWTF) in February 2025, discharging 900 gallons of effluent with pH of 11.06 into the city's WWTF.

F.  On March 28, 2025, DWEE issued an LNC to Defendant for the facility's continued limit exceedances of TSS and BOD; for three unanticipated bypasses in March 2025 to the City of Norfolk's WWTF, totaling over 4000 gallons of high pH discharge; and for failing to report the unanticipated bypasses in March 2025. Defendant was requested to provide a description of the bypasses, including the process that generated the discharges, and to develop a plan to prevent their recurrence.

G.  On May 12, 2025, DWEE issued an LNC to Defendant for the facility's failure to sample phosphorus, oil, and grease as required by its NPDES permit; for failing to comply with self-reporting requirements for its limit exceedances; and for failing to provide Discharge Monitoring Reports, including noncompliance reports, to the City of Norfolk.

H.  On September 11, 2025, DWEE issued an LNC to Defendant for the facility's continued limit exceedances of pH, TSS, and BOD, in violation of its NPDES permit, on occasions from May 2025 through August 2025. The LNC also cited Defendant for discharging 250 gallons of wastewater to land from the facility's north lift station on September 4, 2025.

31.  Defendant's facility has also been subject to numerous investigations of environmental concern related to Corporation Gulch, an undesignated tributary of the Elkhorn River and drainage ditch abutting Defendant's facility.

32.  One such investigation involved the killing of 188 fish in June 2024 caused by approximately 4,000 gallons of dairy-related discharge solution entering Corporation Gulch through a stormwater outfall. DWEE attributed the fish kill to the level of dissolved oxygen in the

7

runoff.

33. On September 11, 2024, following a compliance inspection by the U.S. Environmental Protection Agency, Defendant was issued a Notice of Preliminary Findings (NOPF) related to its unauthorized discharges into Corporation Gulch in violation of its stormwater discharge permit. In the NOPF, the EPA cited Defendant for a violation of Section 1.7.1 of its permit's limits which state that discharges:

> "Shall not be toxic to aquatic life in surface waters of the state outside the mixing zones allowed in NDEE Title 117, *Nebraska Surface Water Quality Standards*; shall not contain pollutants at concentrations or levels that produce objectionable films, colors, turbidity, deposits, or noxious odors in the receiving stream or waterway; and shall not contain pollutants at concentrations or levels that cause the occurrence of undesirable or nuisance aquatic life in the receiving stream."

34. The City of Norfolk has reportedly counted nearly 300 violations of Defendant's wastewater permit in the year 2024 alone.

35. As evidenced in an Emergency Complaint and Order issued by DWEE, Defendant failed to provide information regarding the destination of 60,000-80,000 gallons of high strength waste liquid trucked from its facility. Defendant's omission was discovered during a joint inspection of Defendant's facility by DWEE and the U.S. EPA on September 10, 2024. Issued September 17, 2024, DWEE ordered Defendant to immediately make hazardous waste determinations on all solid waste generated by the facility, report such determinations, and to cease all removal and disposal of solid waste in violation of Neb. Admin. Code, Title 128, Nebraska Hazardous Waste Regulations.

36. Defendant has failed to act in accordance with its regulatory permits, and through such omissions and/or negligent industrial operations has emitted noxious odors beyond the bounds of its facility.

37. Defendant has failed to cease the noxious emissions, despite knowledge, and

despite the emissions being abatable with reasonable care and diligence.

38. Defendant intentionally, recklessly, willfully, wantonly, maliciously, grossly and negligently failed to properly maintain and operate the facility and caused the invasion of Plaintiffs' property by noxious odors on intermittent and reoccurring dates.

39. The Class Area is home to a wide range of commercial and recreational activities, including but not limited to agriculture, transportation, warehousing, retail trade, health care and social services, education, construction, and dining.

40. Plaintiffs and the putative Class are a limited subset of individuals in Norfolk and the Class Area that include only owners/occupants and renters of residential property who live within the Class Area and fit within the Class Definition.

41. Members of the public, including but not limited to businesses, employees, commuters, tourists, visitors, customers, clients, students, and patients, have experienced and been harmed by noxious odors emitted from the facility into public spaces; however, unlike Plaintiffs and the Class, members of the public who are outside the Class Definition have not suffered any damages of the same kind, in the form of diminished property values and/or loss of use and enjoyment of their private property.

## CLASS ALLEGATIONS

42. Plaintiffs reallege all preceding paragraphs as though fully incorporated herein.

**A. Definition of the Class**

43. Plaintiffs bring this action individually and on behalf of all persons as the Court may determine to be appropriate for class certification, pursuant to Federal Rule of Civil Procedure 23. Plaintiffs seek to represent a Class of persons preliminarily defined as:

> **All owner-occupants and renters of residential property located within the following geographic area at any point in time during the applicable statute of limitations: Starting at W Norfolk Avenue and S 18th Street, proceed south**

**down S 18th Street. S 18th Street will turn into Center Drive; follow it to US Route 18. Proceed south on US Route 81 to Monroe Avenue. Take Monroe Ave east to S 1st Street. Proceed north on S 1st Street to Interstate 275. Follow Interstate 275 east to Logan Street. Proceed north on Logan Street to E Park Avenue. Follow E Park Ave west to S 1st Street. Proceed north on S 1st Street to W Norfolk Avenue. Follow W Norfolk Avenue back to point of origin.**

The class area boundary is subject to modification as discovery will disclose the location of all persons properly included in the Class ("Class Members"). Plaintiffs reserve the right to propose one or more sub-classes if discovery reveals that such subclasses are appropriate.

44. This case is properly maintainable as a class action pursuant to and in accordance with Rule 23(a) of the Federal Rules of Civil Procedure in that:

   a. The class, which includes thousands of members, is so numerous that joinder of all members is impracticable;

   b. There are substantial questions of law and fact common to the class including those set forth in greater particularity herein;

   c. Questions of law and fact such as those enumerated below, which are all common to the class, predominate over any questions of law or fact affecting only individual members of the class;

   d. A class action is superior to any other type of action for the fair and efficient adjudication of the controversy;

   e. The relief sought in this class action will effectively and efficiently provide relief to all members of the class; and,

   f. There are no unusual difficulties foreseen in the management of this class action.

   g. Plaintiffs, whose claims are typical of those of the Class, through experienced counsel, will zealously and adequately represent the Class.

   B. **Numerosity**

45. Based on available data, the number of residential households within the Class Area is 2,484.

46.     The Class consists of thousands of members and therefore is so numerous that joinder of all permitted class members is impracticable.

**C.     Commonality**

47.     Pursuant to Fed. R. Civ. P. 23(b)(3), there are numerous questions of law and fact common to the Class that predominate over any individual questions affecting Class members, including, but not limited to the following:

   a. whether and to what extent Defendant negligently, knowingly, intentionally, and/or recklessly failed to design, operate, and maintain the facility and its operations;

   b. whether Defendant owed duties to Plaintiffs and the Class;

   c. which duties Defendant owed to Plaintiffs and the Class;

   d. whether Defendant met its standard of care with respect to its operation, design, and maintenance of the facility and its operations;

   e. whether and to what extent the facility's noxious odors were dispersed over the Class Area;

   f. whether it was reasonably foreseeable that Defendant's failure to properly design, operate, and maintain the facility and its operations would result in an invasion of Plaintiffs' property interests;

   g. whether the degree of harm suffered by Plaintiffs and the Class constitutes a substantial annoyance or interference; and,

   h. the proper measure of damages incurred by Plaintiffs and the Class.

48.     The availability of common proof as to a limited subset of the above questions of law and fact may otherwise permit certification of those issues under Fed. R. Civ. P. 23(c)(4).

**D.     Typicality**

49.     Plaintiffs have the same interests in this matter as all the other members of the Class, and their claims are typical of all members of the Class. If brought and prosecuted individually, the claims of each Class member would require proof of many of the same material

and substantive facts, utilize the same complex evidence including expert testimony, rely upon the same legal theories and seek the same type of relief.

50. The claims of Plaintiffs and the other Class members have a common cause and their damages are of the same type. The claims originate from the same failure of the Defendant to properly construct, maintain and operate the facility.

51. Class Members have suffered similar injuries and harm from the invasion of their private residential properties by Defendant's facility emissions.

### E. Adequacy of Representation

52. Plaintiffs will fairly and adequately represent the interests of the Class and do not have interests adverse to the Class.

53. Plaintiffs live in the Class Area and own or rent property that is subject to the recurring invasion of noxious odors originating from Defendant's facility.

54. Plaintiffs' claims are sufficiently aligned with the interests of the absent class members to ensure that the Class's claims will be prosecuted with diligence and care by Plaintiffs as representatives of the Class.

55. Plaintiffs have no conflicts of interest nor pecuniary interests in Defendant's operations that would affect their ability to serve as representatives of the class.

56. Plaintiffs have retained counsel who are experienced in complex class action litigation and in particular class actions stemming from invasions to property spurred by industrial operations.

57. Plaintiffs' counsel will vigorously prosecute this action and will otherwise fairly and adequately represent Plaintiffs and all absent Class Members.

### F. Class Treatment Is the Superior Method of Adjudication

58. A class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint because:

   a. Prosecution of separate actions by or against individual members of the Class would create an unnecessary risk of inconsistent or varying adjudications with respect to individual members of the Class, which may establish incompatible standards of conduct for the party opposing the Class;

   b. Adjudications with respect to individual members of the Class would be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests;

   c. A class action offers the most appropriate means to adjudicate the claims and defenses by concentrating the litigation, preserving efficiency, and promoting judicial economy;

   d. There are no unusual difficulties posed by managing the case as a class action;

59. Furthermore, class treatment of Plaintiffs' claims is appropriate and necessary to ensure that common relief is available to the Class and that Class Members can vindicate their rights in a single proceeding.

60. Notice can be provided to members of the Class by U.S. Mail and/or publication.

## CAUSE OF ACTION I – PRIVATE NUISANCE

61. Plaintiffs reallege all preceding paragraphs of as though fully incorporated herein.

62. Nebraska Revised Statute § 28-1321(2) defines nuisance as "The erecting, continuing, using, or maintaining of any building, structure, or other place for the exercise of any trade, employment, manufacture, or other business which, by occasioning noxious exhalations, noisome or offensive smells, becomes injurious and dangerous to the health, comfort, or property of individuals or the public; the obstructing or impeding, without legal authority, of the passage of any navigable river, harbor, or collection of water; or the corrupting or rendering unwholesome or impure of any watercourse, stream, or water;… shall be deemed nuisances."

63. The noxious odors which entered the properties of Plaintiffs and the Class originated from the facility maintained and operated by Defendant.

64. The noxious odors invading the properties of the Plaintiffs and the Class have caused a substantial interference with Plaintiffs' reasonable use and enjoyment of their own property.

65. The interferences to the Class and Plaintiffs' use and enjoyment of property include, but are not limited to:

   a. Forcing Plaintiffs and Class Members to remain inside their homes and forgo the use of their yards, porches, or other outdoor spaces, and to generally refrain from outdoor activities;

   b. Causing the Plaintiffs and Class Members to keep their doors and windows closed when they would otherwise have them open;

   c. Creating significant discomfort in the everyday use of their homes and property;

   d. Depriving the Plaintiffs and Class Members of the full rental value of their homes and property; and,

   e. Causing the Plaintiffs and the Class Members embarrassment, inconvenience, and reluctance to invite guests to their homes.

66. The above interferences are objectively offensive to a normal person, are annoying and intolerable, and the invasion itself is significant.

67. Defendant's noxious odors are indecent and unreasonably offensive to the senses, and in doing so have interfered with the comfortable enjoyment of life or property of Plaintiffs and the Class.

68. Defendant's noxious odors are injurious to the health, comfort, and/or property of individuals in the Class Area, satisfying the statutory definition of nuisance under Neb.Rev.St. § 28-1321(2).

69. Defendant is aware of the odors emitted from its facility and has knowledge of the significant impacts the odors have on nearby residents' lives yet has failed to adequately abate or correct the conditions causing the nuisance odors.

70. Plaintiffs and the Class have suffered damages to property because of Defendant's noxious odor emissions, including interference with the use and enjoyment of property, deprivation of full value of property, diminution of property value, discomfort, annoyance, and inconvenience as alleged herein.

## CAUSE OF ACTION II – PUBLIC NUISANCE

71. Plaintiffs reallege all preceding paragraphs as though fully incorporated herein.

72. Nebraska Revised Statute § 28-1321(2) defines nuisance as "The erecting, continuing, using, or maintaining of any building, structure, or other place for the exercise of any trade, employment, manufacture, or other business which, by occasioning noxious exhalations, noisome or offensive smells, becomes injurious and dangerous to the health, comfort, or property of individuals or the public; the obstructing or impeding, without legal authority, of the passage of any navigable river, harbor, or collection of water; or the corrupting or rendering unwholesome or impure of any watercourse, stream, or water;… shall be deemed nuisances."

73. Defendant's continued emission of foul odors and pollutants into the community have made public premises such as businesses, schools, parks, and hospitals less attractive, more difficult to access, and intolerable.

74. Defendant's noxious odors are injurious to the health, comfort, and/or property of the public in Norfolk, satisfying the statutory definition of nuisance under Neb.Rev.St. § 28-1321(2).

75. Defendant owed and continues to owe a duty to the public to prevent and abate the interference with, and the invasion of, the free use and enjoyment of public spaces by emitting noxious pollutants into the ambient air.

76. Defendant has failed to abate its emissions of foul odors and pollutants or correct the conditions causing such nuisance odors and has continued to interfere with the comfortable use and enjoyment of public spaces for the Plaintiffs, the Class, and the public.

77. Plaintiffs and the Class have suffered damages distinct from the public because of Defendant's noxious odor emissions, including harms to the use and enjoyment of their properties and diminution in the rental values of those properties.

78. Separate and distinct from the property damage incurred by Plaintiffs and the putative class, Defendant's noxious odor emissions have substantially and/or unreasonably interfered with rights common to the general public, including the right to uncontaminated and/or unpolluted air.

79. Plaintiffs suffer and continue to suffer special harm, separate and distinct from that suffered by the general public due to the interference with shared public rights, relating to the use and enjoyment of their private residential property, deprivation of the full value of their property, and decreased property values.

80. While Plaintiffs and the general public's right to breathe uncontaminated and unpolluted air in public spaces were similarly infringed by Defendant's emissions, Plaintiffs suffered special injury that the general public did not, in the form of loss of use and enjoyment of their private residential properties, deprivation of the full value of their property, and decreased property values.

81. Defendant's substantial and unreasonable interference with Plaintiffs' use and enjoyment of their property constitutes a public nuisance for which the Defendant is liable to Plaintiffs for all damages arising therefrom, including compensatory and injunctive relief, not inconsistent with, and in addition to, Defendant's state and/or federal regulatory obligations.

### CAUSE OF ACTION III – NEGLIGENCE

82. Plaintiffs reallege all preceding paragraphs as though fully incorporated herein.

83. In maintaining, operating, controlling, engineering, and/or designing parts of the facility, Defendant owes a duty to Plaintiffs and the Class to exercise ordinary care and diligence to prevent noxious odors from invading Plaintiffs' properties.

84. Defendant breached its duty to exercise ordinary care and diligence when it improperly maintained, operated, engineered, and/or designed the facility and knew, or should have known, that such actions would cause Plaintiffs' properties to be invaded by noxious odors.

85. On occasions too numerous to list, Defendant negligently and improperly maintained and operated the facility, causing the invasion of noxious odors onto Plaintiffs and the Class's properties within the Class Area.

86. Defendant owed and continues to owe a duty to Plaintiffs and the putative class, as neighboring residents with private property interests, to prevent and abate the interference with, and the invasion of, their private property interests.

87. As a direct and proximate result of Defendant's failure to exercise ordinary care, Plaintiffs' properties have been and continue to be physically invaded by noxious odors.

88. As a direct and proximate result of the invasion of Plaintiffs' properties by noxious odors, Plaintiffs have suffered damages, as alleged herein, and Plaintiffs seek all damages allowed by law, including, but not limited to, compensatory, exemplary, and injunctive relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the proposed Class, pray for relief as follows:

A. Certification of the proposed Class pursuant to Fed. R. Civ. P. 23;

B. Designation of the Plaintiffs as the representatives of the proposed Class and designation of their counsel as Class Counsel;

C. Judgment in favor of Plaintiffs and the Class Members against Defendant;

D. Compensatory damages to the Plaintiffs and the Class, including pre-judgment and post-judgment interest;

E. An Order holding that entrance of the aforementioned noxious odors upon Plaintiffs' property and the Class Area constitute a nuisance;

F. An Order holding that Defendant was negligent in causing property damages to Plaintiffs and the Class.

G. Injunctive relief not inconsistent with Defendant's federally and state-enforced air permits;

H. Attorney fees and costs; and,

I. All other proper relief as the Court deems just.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

Dated: November 24, 2025                    Respectfully Submitted:

*s/   Karen Bailey*
Karen Bailey
**BAILEY LAW, PC., L.L.O.**
12830 Augusta Ave.
Omaha, Nebraska 68144
Tel: (402) 671-0344
classaction@baileylawpc.com

18

*s/ Steven D. Liddle*
Steven D. Liddle *
Laura L. Sheets*
Reed Solt*
*\* Pro Hac Vice Applications to be Submitted*
**LIDDLE SHEETS P.C.**
975 E. Jefferson Avenue
Detroit, Michigan 48207-3101
Tel: (313) 392-0015
SLiddle@lsclassaction.com

*Attorneys for Plaintiffs and Class*
